GEORGE WALKER, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Insanity — what must be shown to render a person irresponsible for his criminal acts — upon whom the burden of proving the sanity or insanity of the accused rests.*

Upon the trial of the plaintiff in error for the crime of abduction, the defense being insanity, his counsel requested the court to charge that the true test of criminal responsibility, where the defense of insanity is interposed to an indictment, is whether or not the accused had sufficient reason to know right from wrong, and whether or not he had sufficient power of control to govern his actions. The court charged the first part of the request, but declined to charge the latter portion thereof.

*Held,* no eror; that if the accused had sufficient reason and intelligence to know right from wrong, it was a matter of no moment whatever whether or not he had sufficient power to control or govern his actions.

The judge charged the jury that to establish a defense on the ground of insanity, it must be *clearly proven* that at the time of committing the act, which was the subject of indictment, the accused was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; or if he did know it, that he did not know that he was doing wrong; that if the testimony satisfied them beyond a reasonable doubt of his guilt, and that he was not insane, it would be their duty to convict; and further, that if there was any reasonable doubt arising upon the evidence in the case, and upon nothing else, it would be their duty to give him the benefit of that doubt and acquit him.

The prisoner's counsel requested him to charge that the defendant in a criminal case was not required to prove his insanity in order to avail himself of that defense, but merely to create a reasonable doubt upon this point, and that thereupon the burden of proving the sanity falls upon the people. This the judge declined to charge.

*Held,* that in view of the charge already given the judge committed no error in refusing to charge as requested.

WRIT OF ERROR to the Court of General Sessions for the city and county of New York, to review the trial and conviction of the plaintiff in error of the crime of abduction.

*William F. Kintzing,* for the plaintiff in error.

*Daniel G. Rollins,* for the defendants in error.

BRADY, J.:

The plaintiff in error was indicted and tried for the crime of abduction, and was convicted and sentenced to the State prison for term of ten years. The response made to the charge was insanity. Upon the trial the counsel for the plaintiff in error requested the court to charge, first, that the true test of criminal responsibility, where the defense of insanity is interposed to an indictment, is whether the accused had sufficient reason to know right from wrong, and whether or not he had sufficient power of control to govern his actions. The learned recorder, in answer to this request, said : " I will charge the first part of that proposition, namely, the true test of criminal responsibility, where the defense of insanity is interposed to an indictment, is whether the accused had sufficient reason to know right from wrong." But he further said : " I decline to charge the latter part, namely, and whether or not he had sufficient power to govern and control his actions." The prisoner, by his counsel, excepted to the refusal to charge as requested.

The counsel for the prisoner also requested the recorder to charge that the defendant, in a criminal case, was not requested to prove his insanity in order to avail himself of that defense, but merely to create a reasonable doubt upon this point, " whereupon the burden of proving the insanity falls upon the people." The learned recorder declined to charge as requested and the counsel for the plaintiff in error duly excepted. The recorder in his charge to the jury said, that to establish a defense on the ground of insanity it must be clearly proven that, at the time of committing the act which is the subject of the indictment, the party accused was laboring under such a defect of reason, from a disease of the mind, as not to know the nature and quality of the act he was doing ; and if he did know it, that he did not know that he was doing wrong. Counsel for the plaintiff in error excepted to the words " clearly proven," as used in this extract from the charge, and the exception was duly noted.

It will be perceived, in reference to the first request, that in addition to the proposition as to the capacity of the plaintiff in error to know right from wrong, it was designed by his counsel to create another test or condition, namely, as to whether the plaintiff in error had sufficient power to govern and control his actions, which is to

say, in effect, that if he had sufficient reason to know right from wrong, and knowing it had not sufficient power to control and govern his actions, and did the act charged with a knowledge therefore that it was wrong, the act was to be regarded as that of an insane person and one irresponsible for his deed.

It is enough to say that there is no precedent for such a combination of elements as is presented in this request. The true test upon the authorities is that announced by the learned recorder, namely, whether the accused had sufficient reason to know right from wrong; and if he had sufficient intelligence to know it, whether he had sufficient power to control or govern his actions was a matter of no moment whatever. Assuming that he had reason enough to know that he was doing wrong when he committed the act of which he stood accused, it was his duty to control himself, a duty that he owed to God and man, and one for the omission of which under the law of the land he was to be punished. The courts have gone quite far enough in declaring that if the accused is laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he is doing, and if he did know it that he did not know that he was doing wrong, he should be regarded as irresponsible for the act charged against him.

There are some *obiter dicta* which would seem to evidence an intention to shroud this doctrine in doubt, or to hamper it with conditions subversive of its clearness and efficacy, but they have not been adopted in any adjudicated case as expressive of the law of this State. If when a person is put upon trial it is urged on his behalf that he was insane at the time of the commission of the crime of which he is accused, he is not entitled to the benefit of the rule governing that averment to any greater extent than that expressed by the recorder in this case, and it is to be given to the jury as a rule without conditions and without qualifications. If the testimony submitted for the consideration of the jury established such mental infirmity as the rule itself suggests, then the prisoner is entitled to his discharge upon the ground of his irresponsibility. But if the testimony does not fully respond to these requirements, then he must suffer as a person presumed to be sane, and on whose behalf sufficient evidence has not been given to overcome this presumption. (*Freeman* v. *People*, 4 Denio, 9; *Willis* v.

*The Peeple,* 32 N. Y., 717; *Flanagan* v. *The People,* 52 id., 467.) This is all that it is deemed necessary to say with regard to the first request.

The second request herein stated is subtle in its character; it is that the defendant in a criminal case is not required to prove his insanity in order to avail himself of that defense, but merely to create a reasonable doubt upon this point, whereupon the burden of proving sanity falls upon the people. It would be sufficient, in answer to the exception which was taken to the refusal of the recorder to charge this request, that the burden of proving sanity does not fall upon the people in any case. The prisoner is arraigned and the jury are impanneled with two legal presumptions existing, one that he is innocent and the other that he is sane. If the prisoner is to be relieved from the consequences of his offense by reason of a mental infirmity existing at the time of his transgression amounting to insanity, it becomes his duty, or the duty of some person on his behalf, to overcome the presumption of sanity by satisfactory evidence, and the people may rest upon the presumption of sanity without resorting to any proof. This point has been expressly decided in *Walter* v. *The People* (reported in 32 N. Y., 147), which was a case of homicide. The court was requested to charge, as a proposition of law, that in a case where the defense consists of the insanity of the prisoner it becomes incumbent upon the prosecution to prove him sane. The court said, that as an abstract proposition the request was manifestly unsound, that sanity was presumed to be the normal state of the human mind, and that it was never incumbent upon the prosecution to give affirmative evidence that such a state exists in a particular case. And this doctrine was reaffirmed in the case of *Ferris* v. *The People* (reported in 35 N. Y., 125), and again reasserted in the case of *Brotherton* v. *The People* (75 N. Y., 162), in which Judge CHURCH delivering the opinion of the court said: "Sanity being the normal and usual condition of mankind the law presumes that every individual is in that state, hence a prosecutor may rest upon that presumption without other proof. The fact is deemed to be proved *prima facie.*"

In as much as the request contained more therefore than the prisoner was entitled to, the recorder was not obliged to charge it under well settled rules. In addition, however, to this response, it must

be further said that the request, aside from the objectionable portion which has been referred to, from its phraseology called upon him to declare that the defendant in a criminal case was not required to prove his insanity in order to avail himself of that defense, but merely to create a reasonable doubt upon this point, namely, upon the point of insanity. The learned counsel for the plaintiff in error no doubt designed to state that it was sufficient for his client to create a reasonable doubt upon his sanity; but the request does not contain that proposition. If there were nothing else to be said upon this particular element of the case, the view might be regarded as hypercritical; but the learned recorder substantially charged upon the rule which the prisoner's counsel doubtless intended to invoke by the request itself, for he said, after referring to the evidence of insanity:

"It is for you to determine upon all this evidence, whether or not on the 15th of June, 1881, when it is alleged that this man perpetrated the offense of abducting this child, he was sane or insane; in other words, whether his mind was in such a condition that he was perfectly able to comprehend and understand the difference between right and wrong, and that he did know that he was doing a wrong act, if he had sufficient mind to form that intent, which the law requires must be proved to exist, and it is for you to determine those questions; they are purely questions of fact. If you come to the conclusion that the prisoner was insane at the time it is charged that he perpetrated this crime, you will find him not guilty on the ground of insanity. If you come to the conclusion, beyond all reasonable doubt, that he committed the crime of abduction, as I have defined it, if the testimony satisfies you beyond a reasonable doubt of his guilt and that he was not insane, it will be your duty to convict; and further, if there is any reasonable doubt arising upon the evidence in the case, and upon nothing else, it will be your duty to give the prisoner the benefit of that doubt and acquit him."

It must be further said in regard to this request, that in the case of *Brotherton* v. *The People* (*supra*), it appeared that the judge, in charging the jury, used this expression:

"This allegation of insanity is an affirmative issue, which the defendant is bound to prove, and you must be satisfied, from the

testimony introduced by him, that he was insane;" and he further charged that if there was a well founded doubt whether the man was insane at the time he fired the pistol the jury were to acquit him. It was held that in these two paragraphs of the charge taken together, there was no error, and the court in reviewing the trial said that the prisoner was bound to prove that he was not sane, and whether insanity was called an affirmative issue, or it is stated that the burden of proof of insanity is upon the prisoner in order to overcome the presumption of sanity, is not very material if the jury are told as they were that a reasonable doubt upon that question entitled the prisoner to an acquittal.

The jury in this case were told that if they came to the conclusion that the prisoner was insane at the time it was charged he perpetrated the crime, they were to find him not guilty on the ground of insanity; and further, that if they came to the conclusion, beyond all reasonable doubt, that he committed the crime, and that he was not insane, it was their duty to convict him; and further, that if there was any reasonable doubt arising from the evidence in the case, he was entitled to the benefit of that doubt, and it was their duty to acquit him. They were substantially charged, therefore, that if there was a doubt about the guilt of the plaintiff in error, arising either from his innocence of the crime itself, or from a doubt as to his sanity, that he was entitled to a verdict of acquittal.

It will have been perceived that in the case of Brotherton, to which reference has been made, the charge was directly to the effect that the insanity urged on behalf of the prisoner was an affirmative issue which he was bound to prove, and that the jury must be satisfied, on the testimony introduced by him, that he was insane, which was not done in this case. The learned recorder charged that to establish the defense of insanity it must be clearly proven that at the time of committing the act which was the subject of the indictment, the party accused was under a defect of reason from a disease of the mind; so that the case of Brotherton and this one are, in the respects in which they have been compared, in harmony.

From what has been said the view entertained of the exception to the charge in which the learned recorder used the words "clearly proven," may be foreshadowed. The exception in this respect is regarded as valueless. As already suggested, taken in connection

with another paragraph, to which reference has been made herein, it is no broader than the charge sustained in the case of *Brotherton* v. *The People* (*supra*). In that case it was charged that the prisoner's insanity was an affirmative issue which he was bound to prove, and in this case it was declared to be a defense which must be clearly proven. The cases are analogous and parallel.

The precise question presented by the exception, although it has not been definitely decided in this State, and although it may seem to be in doubt (see *People* v. *McCann*, 16 N. Y., 58; *Flanagan* v. *The People*, 52 id., 467), appears to have been answered in the case of *M'Naghten* (10 Clark & Fin., 210), in which Lord Chief Justice TINDALE said that the jury should be told that "to establish a defense on the ground of insanity, it must be clearly proved that at the time of the committing the act the party accused was laboring under such a defect of reason, from a disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong." This case is regarded, therefore, as an express authority for the proposition that the defense of insanity must be clearly proven in order to overcome the presumption of sanity which the prisoner encounters at the commencement of his trial. The question of insanity in its legal phases may be a very interesting subject to discuss. It certainly presents a very broad field when contemplated with the numerous adjudications, both in this country and in England, affecting it, and the number of elementary writers who have considered it; but it is not necessarily the duty of an appellate court to write a review of these cases, it is enough to express the conclusion arrived at in regard to it when presented for examination, upon consideration of the controlling decisions in this State bearing upon it. This has been done in this opinion, and it follows that the judgment must be affirmed.

DANIELS, J.:

The law of this case seems to have been carefully observed at the trial. Upon both the important points presented, the instructions given to the jury were in strict accord with the authorities which have long been regarded as correct expositions of the law. In M'Naghten's case the proper course to be followed in the disposi-

tion of the defense of insanity was considered and determined by the House of Lords, the highest English judicial authority. And it was then held that "every man is to be presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes until the contrary be proved." And "to establish a defense on the ground of insanity it must be clearly proved that at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong." "If the accused was conscious that the act was one which he ought not to do, and if that was, at the same time, contrary to the law of the land, he is punishable." (10 Clark & Fin., 200, 210.) The same subject received the consideration of the Court of Appeals in *Flanagan* v. *People* (52 N. Y., 467). And the same criterion was sanctioned for the disposition of the defense of insanity, as that which was adopted by the preceding case in England. And in the latter case it was further held that the accused was not entitled to an acquittal simply because the criminal act might have been committed in subordination to some irresistible impulse or inclination. This point was urged in behalf of the prisoner in that case by the same learned counsel now representing the present plaintiff in error, and it was answered by the court in very plain language, as follows: "Indulgence in evil passions weakens the restraining power of the will and conscience, and the rule suggested would be the cover for the commission of crime and its justification. The doctrine that a criminal act may be excused upon the notion of an irresistible impulse to commit it, where the offender has the ability to discover his legal and moral duty in respect to it, has no place in the law." And the remark of an able English justice that "every crime was committed under an influence of such a description, and the object of the law was to compel people to control these influences," was repeated with approval. (Id., 470.) In *Reg.* v. *Haynes* (1 Foster & Fin, 666), this subject was further considered, and it was there observed that "if an influence be so powerful as to be termed irresistible, so much the more reason is there why we should not withdraw any of the safeguards tending to counteract it. There are three powerful restraints existing, all tending to the assistance of the person who

is suffering under such an influence, the restraint of religion, the restraint of conscience and the restraint of the law. But if the influence itself be held to be a legal excuse, rendering the crime dispunishable, you at once withdraw a most powerful restraint, that forbidding and punishing its perpetration. We must therefore return to the simple question, 'Did the prisoner know the nature of the act he was doing, and did he know he was doing what was wrong?'" (Id., 667.) These principles present the gist and substance of the law upon these subjects. They have been discussed in very many other instances and concurring in the same conclusions. For that reason, particular references to them is at the present time not necessary. To a great extent they are considered in the opinion of Mr. Justice BRADY, to which concurrence and approval may very properly be given. For the reasons assigned by him, and those suggested by Presiding Justice DAVIS, and maintained in such plain language as to preclude the possibility of misapprehension on the occasions just referred to, this conviction should be affirmed.

DAVIS, P. J.:

On the question what constitutes the insanity which in law exonerates from the punishment of crime on the ground of irresponsibility, I concur fully in the views and conclusions of my brother BRADY. On the question of the burthen of proof after evidence has been given by the accused tending to show insanity, the learned recorder had given to the jury in his charge the true rule applicable to a case of the kind when it comes upon all the evidence to be submitted to the jury; and having done this, it was no error to refuse to submit upon the part of the prisoner a proposition which, if correct in itself, was only calculated to confuse the jury by distracting their attention from the real question, which upon the whole evidence had already been correctly submitted to them. The recorder committed no legal error in refusing to charge as requested in the form presented by the counsel for the prisoner. I concur, therefore, in the affirmance.

Judgment affirmed.