FRANCIS FERRIS, Plaintiff in Error, *v.* THE PEOPLE, &c.,
Defendants in Error.

The statute of 1859 (ch. 208) is applicable to the General Sessions of New York,
by the provisions of which, it may extend its term beyond the third week
of the session.

When there is an irregularity in the drawing of the jury, which cannot affect
the rights of the prisoner, even though it be such as to subject the delinquent
to punishment, will not render the panel illegal.

Mere irregularities, not affecting the rights of the parties, are to be discarded by
the appellate court, in reviewing the decisions of the General Sessions of
New York.

A party, seeking to reverse its judgment, should allege, at least, a prejudicial
error.

*John H. Anthon,* for plaintiff in error.

*A. Oakey Hall,* for defendant in error.

DAVIES, Ch. J.   The plaintiff in error was indicted and
tried in the Court of General Sessions in and for the city and
county of New York, and convicted of murder in the first
degree, and sentenced to death.   The conviction was affirmed
in the Supreme Court, and the prisoner has brought his writ
of error to this court.

Three points or grounds are presented and urged for a
reversal of the judgment.

1. That the trial, verdict and judgment are shown, by the
record, to have been had after the expiration of the third
week of the term of the General Sessions, which, it is claimed,
was the legal limits of the sitting of the court, unless a con-
tinuance of the term had been entered on the record, or upon
the minutes of the court, and which it is assumed was not
done, as it does not appear, by the record, to have been done.

2. That the court erred in overruling the challenge by the
prisoner to the array.

3. That there was error in the charge of the court to the
jury on the subject of insanity.

By the third section of the act to enlarge the jurisdiction
of the Court of General Sessions in and for the city and county

of New York (Laws of 1855, ch. 337), it is declared that the appellate court, before which a writ of error may be brought, may order a new trial, if it shall be satisfied that the verdict against the prisoner was against the weight of evidence, or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below.

The provisions of this act make it, therefore, the imperative duty of this court, in a case like the present, to examine carefully the whole record, and, if satisfied that the verdict is against the weight of evidence, or suit authorized by law, or, if it shall be of opinion that justice requires a new trial, then the same shall be granted, whether or not any exception shall have been taken in the court below. The whole case is, therefore, to be considered here as *res nova*, and the judgment is to be affirmed or reversed, as the court shall be of opinion whether or not substantial justice has been done. The clear intent of this statute is to impose on the court a disregard of technicalities and irregularities not working any prejudice to the prisoner, and decide the case according to justice and the very right of the matter.

Bearing in mind these cardinal principles, we find, on examination of the evidence contained in the record, a clear case of the taking of human life with premeditated design, without authority of law, and under such circumstances as do not render the act excusable or justifiable, and such taking of life, the statutes of this State declare, is murder in the first degree. Of this crime the prisoner has been convicted by a verdict of the jury, and, if no error has intervened upon the trial, prejudicial to the accused, it is our duty to affirm the judgment rendered upon such conviction.

It is not, and could not well be urged, that the verdict is against the weight of evidence. The testimony is all on the side of the prosecution, except a single witness, whose evidence will hereafter be adverted to, and the jury were fully warranted in rendering the verdict given. There remains to be considered the objections now urged why the judgment should be reversed, and they will be examined in the order above stated.

1. Was there any fatal irregularity in the continuance of the term of the General Sessions beyond the three weeks originally limited for its sittings?

Under the Revised Laws, it was not lawful for the General Sessions to sit longer than two weeks. (2 R. L., 1813, p. 203, § 8.)   The Revised Statutes authorized that court to sit three weeks. (2 Stat. at Large, p. 526, § 31.)   And by a special law passed in 1846 (Laws of 1846, ch. 2), it was provided, that whenever the trial of a cause shall have been commenced in that court, "and the same shall not be concluded before the expiration of the term of said court, it shall be lawful for the said court to continue in session until the conclusion of said trial, and to proceed to judgment, if they shall so deem necessary, in cases where conviction shall be had."

In 1859 (Laws of 1859, ch. 208), an act was passed which declared that it should be lawful for the Court of Sessions of any county of this State to continue its sittings at any term thereof so long as it may be necessary, in the opinion of such court, for the dispatch of any business, or the determination of any cases that may be pending before such court.

It appears by the record that the term of the General Sessions for the city and county of New York commenced on the first Monday of February, 1865, and that the prisoner was tried on the 28th day of said month. As the first Monday of February in that year was on the sixth day of that month, it follows that the present trial was not commenced until the expiration of the third week of said term. If the Court of General Sessions of the city and county of New York is embraced within the purview of the act of 1859, then the court could lawfully try the prisoner, although the trial was not commenced until after the expiration of the third week of the term.   This precise point arose and was discussed in the case of *Lowenburgh* v. *The People* (27 N. Y., 336), and as the conviction in that case was affirmed, the power of the Court of General Sessions to sit beyond the third week, and the applicability of the act of 1859 to the Court of General Sessions of New York, must be deemed

also to have been affirmed. It was said, in the leading opinion in that case, that "a Court of General Sessions of the peace, and a Court of Sessions of any county, are one and the same tribunal. It is the criminal court of the county, whether held by the same or different magistrates." (*People* v. *Powell*, 14 Abb., 91.)

I am, therefore, of the opinion that the act of 1859 authorized the Court of General Sessions of the city and county of New York to continue in session until it passed sentence upon the prisoner in this case. That period was beyond the three weeks limited by law. It may safely be asserted that all the judges concurred in this view of the application of the law of 1859. We must, therefore, hold that the term of the General Sessions was lawfully held beyond the third week from its commencement.

There was no testimony on the trial which warranted, or in any respect sustained, the defense of insanity. The only witness called to establish that defense testified, on the direct examination, that on the afternoon of the homicide, and before it was committed, he saw the prisoner on the sidewalk on the top of the stoop sitting down; that he had a knife in one hand, and was sharpening it on the edge on the stone.

The witness was then asked, did you notice anything peculiar about him that attracted your attention? He answered, I noticed some kind of madness — a kind of rolling of the eyes as if he was having some words with somebody. The witness spoke to him and asked him where he had been.

On his cross-examination he was asked, you noticed a kind of rolling of the eyes? He replied, yes, sir; that is what I noticed, as if he was cross or having some words with somebody. He was then asked, at that time did you think he was insane? He answered, no; I would not like to say that. He was then asked, did the idea enter your head that he was insane? He replied, no, sir; I did not regard him as an insane man. The physician to the city prison testified that he had never seen in the prisoner the slightest evidence of insanity.

This evidence wholly failed to lay any foundation for the defense of insanity. It may be said in this case, as was said in that of *Walter* v. *The People* (32 N. Y., 147), "There was not a particle of evidence in this case showing the prisoner to have been insane when he committed the homicide. The defense of insanity failed utterly. Hence the legal proposition asked to be given to the jury was of the most abstract character, and for this reason the judge was not called upon to say anything about it. Sanity is presumed to be the normal state of the human mind, and it is never incumbent upon the prosecution to give affirmative evidence that such state exists in a particular case."

What the learned recorder did say on the subject of insanity, although wholly inappropriate to the case under consideration, was unexceptionable, and fully sustained by authority and medical authors. The prisoner suffered no prejudice therefrom. It remains to consider the challenge to the array.

It must be conceded that the most culpable irregularities existed in reference to the drawing of the additional panel of jurors ordered by the court. The officers whose duty it was to attend such drawing were clearly guilty of a gross neglect of their duty, and doubtless are liable to punishment therefor. The question still arises whether any injury has resulted to the prisoner, or he has been prejudiced thereby. If we could see that by any possibility this neglect of duty on the part of these officers could have changed the panel, or in any manner have produced any different result, we might hesitate whether the prisoner should not have a new trial. It is apparent from the statute that the officers enumerated were but to be silent spectators to the drawing of the names of the jurors from the jury box. Their presence, therefore, would not and could not have changed a name drawn, and their authentication of the drawing, although required by the statute, is of but little moment if the names actually drawn were then returned on the panel. It is not alleged that this was not so, and the subsequent certificate of the drawing attested what had actually occurred except

as to the fact of the presence of the signers at the time the drawing took place.

It does not seem to me that this circumstance, resulting as it undeniably did in no injury or prejudice to the prisoner, is sufficient, in view of our duty under the act of 1855, in reviewing trials in the New York General Sessions, to warrant us in granting a new trial. The case appears to have been carefully tried, the testimony was clear and conclusive to establish the guilt of the prisoner, and every privilege which the law secures to him would appear to have been extended to him. No sufficient reasons have been suggested for a reversal of the judgment, and it should therefore be affirmed. Judgment should be affirmed, and as the time fixed for the execution of the sentence has elapsed, the proceedings will be remitted to the Supreme Court, to the end that it may direct the sentence to be executed according to law.

Concurring with DAVIES, Ch. J., WRIGHT, PORTER, LEONARD and PECKHAM, JJ.; HUNT, J., thought the challenge to the array was good; and MORGAN and SMITH, JJ., concurred.

Judgment affirmed.