People agt. Tweed.

# SUPREME COURT.

### No. 1.

## The People, &c., agt. William M. Tweed.

*Requirements of the statute in obtaining a struck jury — selection of a name not on the list of jurors — its effect — challenge to the array.*

From necessity, as well as by statute, the commissioner of jurors for the city and county of New York must complete a list of all jurors liable to serve, and file in the office of the county clerk a certified copy thereof, and he shall, from time to time, return the names of any persons omitted on the list; and all those sent, up to the time of the selection of the struck jury, are those from which the selection is made.

The summoning of only twenty-three jurors, whose names appear on the list of jurors from which the selection of the struck jury should have been made, and whom the elisors chose, and of one additional person, whose name does not appear on the list to which the choice must be limited, and whom the elisors did not, in fact, so designate, is good ground for challenge to the array.

*N. Y. Circuit, Part II, January 5, 1876.*

*Before Hon. Judge Westbrook.*

Challenge by defendant, Tweed, to the array of the special jury in the first cause, commonly called "the six million suit."

*D. D. Field, D. Field & Deyo*, for defendant.

*Wheeler H. Peckham & James C. Carter*, for plaintiff.

*The Court.*—During the interval which has elapsed since the discussion upon the questions involved in this challenge,

I have endeavored to investigate them as best I could. I have been somewhat limited in time, and though I endeavored to write out my views, I have only been partially successful. I will, therefore, ask the stenographer to take down what I may state in addition to what I may read.

The challenge to the array of the special or struck jury which has been summoned for this trial, presents two questions, which are: First, has the jury been selected by the elisors from a proper list of jurors filed in the clerk's office? and, second, what is the effect upon the entire panel of placing upon the list of jurors, certified by the elisors to have been selected, the name of one individual — George W. Southwick — which does not appear upon the list of names from which the selection should have been made, and which both the traverse of the challenge and the evidence of the elisors show, was never selected by them? Each of them will be noticed in the order stated.

Preliminarily to the examination of the specific objections, it is important to notice a consideration which is necessary to be remembered in passing upon each, and that is, the object of the statute which makes a special or struck jury. It was passed to give parties in a difficult and extraordinary case a jury of more than usual intelligence and integrity, or, to use the language of the statute itself, directing the clerk of the county, or the elisors as to its selection, one "most indifferent between the parties, and best qualified to try such cause." The mode of obtaining such a jury is clearly pointed out by the statute, and as it is a special proceeding designed for a particular purpose, and out of the ordinary course of procedure, the mode of obtaining it which the statute points out must be pursued. In the case of an ordinary jury, when the sole object is to obtain a competent jury, as long as there is one competent obtained, minor non-compliance with statutes may be overlooked; but when the object is the procuration of one "most indifferent between the parties, and best qualified to try such cause," and the

way of its obtainment is prescribed, it necessarily follows that that way must be mandatory, and is to be rigidly pursued. This brings me to the first question : First, has the jury been selected by the elisors from a proper list of jurors filed in the clerk's office ? In beginning this discussion we must see what are the provisions of the statute on this subject. They are contained in the second volume of *Edmonds' edition of the statutes, top paging* 435, *marginal* 418, *section* 48 : "At the time appointed, the clerk of the county shall attend at his office, with the original lists of the jurors returned to him by the officers of the several towns, who are then liable to serve, and in the presence of the parties, or their counsel, shall proceed to strike a jury as follows : The clerk shall select from such lists the names of forty-eight persons, whom he shall deem most indifferent between the parties, and best qualified to try such cause." The act, then, provides that the clerk shall attend with the original list of the jurors returned to him by the officers of the several towns, and from that list thus returned, or from those lists thus returned, the clerk (and the elisors in this case) shall select from such list the names of forty-eight persons. As I have just said, they are to be taken from the list of jurors returned to the clerk by the officers of the several towns. Suppose, if the selection was in the country, that the lists were filed, and the names were taken from them ; would the objection that the lists furnished to the clerk were imperfect, that the officers had not done their duty, be valid ? I think not, because the clerk has obeyed the statute, and the mere omission by the officer in making up the list of names from which the selection was made would not invalidate, unless corruptly done, or a perceptible prejudice was manifest. The officers, in making the returns, scarcely ever do their full duty, and if this argument is to prevail neither a struck jury, nor any other, could be obtained. I may, in passing, observe that the mode of making out these lists is part of the ordinary jury system, and it was of that original system of summoning

jurors that the decision of the court of appeals, in the case of *The People* agt. *Friery,* reported in the *2d of Abbott's Court of Appeals Cases, page* 227, and also that of the supreme court in the case in the *7th of Wendell, page* 24, were predicated, in which they held that machinery was simply directory. And for that reason I think the failure of the officers of the town fully to comply with the law would not vitiate the selection of the jurors from the list, so long as the clerk or the elisors chose from the list filed by them. In applying this statute to New York city, we must interpret it and use its machinery as modified by legislation applicable to this city. In lieu of lists by town officers filed with the clerk from which the selection is made, we have a provision contained in section 3 of chapter 495 of the Laws of 1847, to the effect that "the commissioner of jurors shall proceed to the selection of such jurors immediately after the first day of May of each year, and the names shall be entered in a book alphabetically arranged, designating the work, occupation and residence of each. From the first day of June in each year, as soon as the list shall be complete, the said commissioner shall publish a notice of at least ten days in the newspapers in which notices of the corporation of the city of New York are printed, that a petty jury list is ready for examination and correction at his office, and he shall receive evidence of exemptions in the same manner as authorized in courts of record. The names of all the persons found to be exempt from serving as jurors shall be struck from the list, and the ground of exemption recorded. When the list is complete, a certified copy shall be delivered to the county clerk, who shall prepare the ballots and deposit them in the box in the manner now required by law. The said commissioner may, at any time, in like manner, return the names of any persons omitted on the list, if no sufficient cause be shown to excuse such person, and their names shall be deposited in the box as jurors for the residue of the year that the other jurors are to serve." So that the machinery devised for the city is the

making out of a list by the commissioner of jurors of all jurors liable to serve, the completion of that list as soon as practical, and when completed, or when partially completed, he shall file in the office of the clerk of the county of New York a certified copy of such list, and he shall, from time to time, return the names of any persons omitted on the list, if no sufficient cause to the contrary be shown. From the vast and fluctuating population of the city, a perfect list of jurors can never be obtained; nor even in time for the necessities of courts can the judgment of the commissioner of jurors upon the whole body of those possibly liable be obtained. Hence, from necessity as well as by statute, he must send lists, from time to time, and all those sent up to the time of the selection of the struck jury are those from which the selection is made. As in the case of lists furnished by town officers, they may be incomplete and imperfect, yet they are those from which the selection must be made, and when so made threfrom, the mandatory law is obeyed. Now, had the commissioner of jurors made and filed such lists when the present selection was made? It is true he had not filed a copy certified to be a copy of lists made out and prepared by him, but if such a certified copy had been filed, it would only have been an official notification to the clerk of the persons he had selected to serve as jurors, and whom the law gave him the right so to select. Now if, instead of telling the clerk indirectly what jurors he has selected as competent to serve, by certifying to a copy of a list which he has prepared and on file in his own office, he tells the clerk directly who the jurors selected are, by simply so declaring; what substantial difference exists? The same result, the selection of jurors competent to serve and the indication thereof to the clerk, is reached; and the mere form of the communication to that officer, whether indirectly, by certifying to a list as a true copy of a list of names selected, or directly, by declaring they are the persons chosen, can make no difference. In this case, the commissioner of jurors had told the clerk

directly, who were liable to serve as jurors, and this is apparent from the form of the certificate: "I hereby certify that the foregoing list of 2,651 names, alphabetically arranged and compared, is the original list of petit jurors selected by me for the county of New York, for the jury year 1875–76. Thomas Dunlap, commissioner of jurors." The object of the certificate prescribed by law, is to tell the county clerk who the jurors are whom he has selected. Whether he does that by sending him the names, certifying them to be a true copy of the list on file in his office, or whether he says to him, in so many words, those are the names, as he has in this case, can make no substantial difference. As the clerk of the county had in his office, when the selection of jurors in this case was made, lists of names whom the commissioner of jurors, by official certificate, had declared competent to serve, this first ground of challenge cannot prevail.

Second, what is the effect of summoning only twenty-three men, whose names appear on the lists from which the selection should have been made, and whom the elisors chose, and of one additional person, George W. Southwick, whose name does not appear on the list to which the choice must be limited, and whom the elisors did not, in fact, so designate? The plain requirements of the statute are: First, forty-eight names shall be chosen from the lists returned to the clerk's office by the elisors. That is apparent from this provision of the statute. "At the time appointed, the clerk of the county shall attend at his office, with the original list of the jurors returned to him by the officers of the several towns who are then liable to serve, and in the presence of the parties, or their counsel, shall proceed to strike a jury, as follows: "The clerk" (or in this case the elisors) "shall select from such lists the names of forty-eight persons whom they shall deem most indifferent between the parties, and best qualified to try such cause." It will be observed that the clerk is limited in his choice to the list of jurors which has

been filed in the clerk's office. But in regard to that list he must exercise his judgment, and out of the body of the names he must select the forty-eight persons who, in his opinion, are "the most indifferent between the parties, and the best qualified to try such cause," so that the judgment of the clerk, or that of the elisors, if the act be performed by them, shall be upon the qualifications of every juror who is thus selected. "The party on whose application such struck jury was ordered, or his attorney, shall then strike out one of the said names, and the opposite party, or his counsel, shall strike out another of said names, and so on, alternately, until each party shall have stricken out twelve names." The necessary effect of which is that there must be twenty-four names remaining who have been chosen by the elisors, or by the clerk, when the clerk performs that duty.

The next requirement is the process which issues to the sheriff which shall command him to summon the identical twenty-four men who have thus been chosen. I use the word "process," because, I take it, the certificate or list that is to be made out is equivalent to a process. That position depends upon this provision of the statute, subdivision 4 of section 47: "The clerk shall thereupon make out a list of the names of the twenty-four persons not struck out, and certify the same to be the persons drawn to serve as jurors pursuant to the order of the court, and shall deliver such lists, so certified, to the sheriff of the county."

The succeeding provision of the statute requires the sheriff to summon the men, and those only, who remain after the right of exclusion has been exercised. Section 49 declares "the sheriff shall summon the persons whose names are contained on the list so delivered to him by the clerk, in the same manner as other jurors are required to be summoned, and shall return the names of those summoned to the court at which they are required to appear as jurors." Tested by these rules, the process for the jury furnished to the sheriff is radically defective. It not only did not contain names all of

whom were to be found upon the list from which the choice was to be made, but it had a more radical defect than that: it did not contain the twenty-four names upon which the judgment of the elisors had been exercised. It contained twenty-three such, and to it was added one, George W. Southwick, never chosen, and from it was omitted one actually selected, John C. Southwick, confessedly two separate and distinct persons, and both of whom are present. When the process to the sheriff, which should have contained the names of twenty-four persons, all of whom had been selected and chosen, includes the names of only twenty-three, can it be held to be valid? And when the sheriff must summon the persons named in the process, can he summon any others? It seems to me that the answer to these questions must be in the negative. The challenge to the array, then, must be sustained upon this ground; because, first, if the certificate of the elisors be taken as the evidence of their choice, twenty-four men have not been chosen as the law directed; and, second, if the certificate of the elisors be not the sole evidence of such choice — but we may resort, as the counsel for the plaintiffs insist, to the evidence of the parties who made the selection — then the process or authority for the summoning was defective, because it did not direct the summoning of the persons chosen. In other words, it seems to me to be this simple proposition, that where the law requires a *venire* to issue for twenty-four men, and the process shall issue for only twenty-three men, that the process will be invalid; and when the statute directs a process to issue to the sheriff to summon the men whom the elisors have chosen, and the process issues not to summon the men whom they have chosen, but to summon only a part of those men, twenty-three of them, and one other person, that then the law is not pursued. For, if the process can issue to summon only twenty-three of the men whom they have chosen, it may issue to summon only twelve of those men and twelve other men, so that the non-compliance with the statute in this case becomes matter of substance.

In disposing of the questions which the challenge involves, I have not overlooked the importance of this cause, nor the desirability of an early and a speedy trial. A result which will be such, in fact and in truth, can only be reached by conforming to plain rules of law, and a well defined course of procedure. A delay of a few days is better for all than a very much longer one, which, when resulting from erroneous procedure, is sure to be inflicted.

I will further state, in regard to the case, that I will continue it upon the calendar, enabling the counsel for the people to make such motion as they please for relieving themselves of this particular difficulty, if they feel so disposed.

*Mr. Carter :* If your honor pleases, we have listened with attention to the reasons given upon which your honor comes to the conclusion that the challenge to the array must be allowed upon the last ground. We had, of course, considered that question ourselves, as well as we could have heretofore considered it, and our conclusions were somewhat different. Of course we are bound to acquiesce in the decision of your honor, and duly appreciate those considerations which your honor has stated, to the effect that it is far better that we should proceed with sure accuracy in every successive step of this case — far better for the final result. At the same time, of course, it is a misfortune to go thus far through the work of assembling a special jury for the purpose of trying this case, and find that the effort has proved abortive. We had, ourselves, supposed that if there should be found any serious defect in the circumstance that the name of George W. Southwick had found its place upon the list of jurors selected, that the difficulty would be easily cured by an exercise of the power of amendment, which the court possesses. Your honor has not considered that question, nor do we now ask you to consider it, not at this present moment. But in answer to the suggestions which have been made by your honor, to the effect that but twenty-three names of those on the list furnished by the county

People agt. Tweed.

clerk were selected, and that the name of a person not on that list was selected in order to make up the twenty-four, the suggestion which we desire to make is this, the real person selected by the elisors, intended to be selected by them, was John C. Southwick.

*The Court:* I think you misunderstood me; I didn't say that. I said that if the list delivered to the sheriff, and from which the sheriff summoned the jury, and which was his authority for summoning it, is to be the sole evidence of the choice of the elisors, then it contains only twenty-three names who can be found upon the list from which the choice was required to be made. I further said that if we could look outside of the list for the choice of the elisors, and take their evidence as to what persons they chose, then the process which went to the sheriff was defective, because it did not contain what the statute required, the names of the persons whom the elisors chose.

*Mr. Carter:* I didn't quite correctly state to your honor, in repeating your suggestions, what you had suggested. Nevertheless, I substantially so understood it, and the defect in the process to the sheriff which your honor thus indicates has seemed to us to be one easily cured by an amendment. That is to say, if, by an amendment of that process, we can now secure that which the elisors evidently intended should be done, and that which they supposed they had done, and that which would have been done if the name of Southwick had been written John C. instead of George W., if we can now secure that end, why, it has seemed to us that the mode of securing it by an amendment is one which is within the ordinary powers of the court. But I only make that suggestion for the purpose of making another, and that is this, we don't wish to make that application now to your honor for an amendment. It is enough for us to know that your honor is not in favor of it at present, and we must consider the views of an independent mind, examining the question as

your honor does, as of far more weight and value than any consideration of ours.

*The Court:* I will state to the counsel, also, that this opinion and conclusion which I have reached, I have submitted to several of my brethren, and they concur with me fully in my opinion.

*Mr. Carter:* That is an additional reason why we should acquiesce in it without any further discussion.

*The Court:* Some of them authorized me so to state this morning.

*Mr. Carter:* At the same time, the suggestion which my associate desired me to make to your honor was this, whether there would be any objection to adjourning the case over until to-morrow morning, and allow us, in the mean time, to consider, more fully, the question whether we would apply for an amendment or not.

*The Court:* Yes, sir.

*Mr. Carter:* If, upon giving the matter the best consideration we can in the mean time, we consider it would be too hazardous, then let the panel be quashed.

*The Court:* I won't make any final order quashing the panel until to-morrow morning. I was a little late this morning, because I was up until late last night investigating the question submitted to me.

*Mr. Carter:* We are very much obliged to your honor for the consideration you have given the case.

*Mr. Dudley Field:* We are even more grateful.

Adjourned to January 6, 1876, at 10.30 A. M.