(160 App. Div. 424)

## PEOPLE v. DAMRON.

(Supreme Court, Appellate Division, Second Department.	December 31, 1913.)

**1. EMBEZZLEMENT (§ 47\*)—PROSECUTION—EVIDENCE—SUFFICIENCY.**

In a prosecution against the president of a bank for converting its funds to his own use, evidence *held* sufficient to carry the case to the jury.

[Ed. Note.—For other cases, see Embezzlement, Dec. Dig. § 47.\*]

**2. EMBEZZLEMENT (§ 11\*)—PROSECUTION—DEFENSES.**

In a prosecution against the president of a bank who converted to his own use funds the bank carried in an account in his own name, the fact that the directors did not demand a return of the money is no defense, where it appeared that they never knew of the existence of the funds appropriated until after the bank was closed and put in liquidation by the state banking department.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 9, 10; Dec. Dig. § 11.\*]

**3. EMBEZZLEMENT (§ 11\*)—PROSECUTION—DEFENSES.**

Where a bank president, who had a special account in his name, but which consisted of the funds of the bank, drew a check on the account and appropriated the proceeds to his own use, the fact that the cashier paid the check is no defense.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 9, 10; Dec. Dig. § 11.\*]

**4. EMBEZZLEMENT (§ 8\*)—PROSECUTION—DEFENSES.**

In a prosecution for conversion by a bank president of moneys belonging to the bank which were deposited in a special account in the president's name, the fact that the money came from bonuses collected upon loans in defiance of the usury law is no defense.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. § 6; Dec. Dig. § 8.\*]

**5. JURY (§ 119\*)—CHALLENGE—FAILURE TO EXCEPT.**

Although Code Cr. Proc. § 364, provides that, if the sufficiency of the facts alleged as a ground of challenge to a juror be denied, the adverse party may except to the challenge, and section 366 provides that if the challenge be denied the denial must be entered on the minutes of the court, and the court must proceed to try the questions of fact, the failure of the prosecution either to except to a challenge to the panel or to deny the facts therein recited does not necessitate the quashing of the panel, and the court's failure to quash the panel will not render the subsequent proceedings wholly void.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 546; Dec. Dig. § 119.\*]

**6. JURY (§ 58\*)—AMENDMENT—EFFECT.**

Laws 1901, c. 602, providing for the appointment of a commissioner of jurors in all counties having a population of 1,000,000 or over, was held unconstitutional in 1902, and in that year the Legislature passed a similar law applying to the appointment of commissioners of jurors in Kings county, which county would have fallen within the act of the earlier statute. *Held*, that as the earlier statute was completely void, Laws 1904, c. 458, expressly amending Laws 1901, c. 602, by adding a clause thereto, added nothing to Laws 1902, c. 564, and hence jurors did not have to be summoned in the county of Kings in accordance with the provisions of the amendment.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 266; Dec. Dig. § 58.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. JURY (§ 71*)—DRAWING OF JURORS—STATUTE.

    Under Laws 1902, c. 564, § 12, providing that at the time specified in the order the special jury shall be drawn at the office of the commissioner of jurors, by the commissioner or his deputy, and a judge or justice of a court of record residing in the department in which the special jury is to be drawn, a challenge to a special jury drawn before the hour fixed by the order must be sustained, as a strict compliance with the statute is necessary, and the fixing of the hour is for the purpose of preventing fraud.

    [Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 368–379; Dec. Dig. § 71.*]

    Burr and Thomas, JJ., dissenting in part.

Appeal from Trial Term, Kings County.

William C. Damron was convicted of grand larceny, and he appeals. Reversed and remanded.

See, also, 80 Misc. Rep. 114, 140 N. Y. Supp. 787.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

John J. Curtin, of New York City, for appellant.
James C. Cropsey, Dist. Atty., of Brooklyn, for the People.

CARR, J. The defendant was convicted in the Supreme Court in Kings county of the crime of grand larceny in the first degree. From the judgment of conviction he appeals to this court. In a learned and earnest brief, the counsel for the appellant presents 14 points, on each of which he asks that the judgment of conviction be reversed. The case is unusual in its character, and presents some serious questions of law. A certificate of reasonable doubt was granted at Special Term.

[1] The defendant was the president of a banking institution in the borough of Brooklyn, known as the "Home Bank." This bank was opened in 1905, and the defendant was its president from the beginning. From its opening down to date of the alleged larceny, October 23, 1907, there appeared upon the books of that bank an account in form as follows: "William C. Damron, President-Special." On the date of the alleged larceny, and for a considerable time prior thereto, there were also two other accounts, "William C. Damron," and, "William C. Damron, Special." The latter account does not figure in the circumstances attending the commission of the alleged larceny and may be omitted from further consideration. It appeared from the proofs of the prosecution that the account "William C. Damron, President-Special," was opened originally at the direction of the defendant. On October 23, 1907, there was a balance to the credit of the "President-Special" account in a sum slightly over $2,500. The defendant drew a check for $2,500 on this account, which he deposited in the Home Bank to the credit of his individual account. With this deposit, his individual account on that day exceeded $9,500 by several hundred dollars. He then drew a check upon his individual account for the sum of $9,500, which he deposited in the Manufacturers' & Traders' Bank, in the borough of Brooklyn. The moneys on deposit to his credit in the latter

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bank were then used by him to pay the purchase price of certain securities which he had contracted to buy for his own personal use and benefit.

It was the claim of the prosecution that the moneys on deposit in the Home Bank to the credit of "President-Special" account were actually the moneys of the Home Bank, and that in withdrawing the said sum of $2,500 on October 23, 1907, for the purpose of using the same for his private and individual purposes, he committed grand larceny. The burden, therefore, was on the prosecution to establish beyond a reasonable doubt that the moneys so withdrawn were the moneys of the bank and were withdrawn with a felonious intent or purpose on the part of the defendant. The prosecution gave proof that this "President-Special" account was opened in September, 1905, by the express direction of the defendant as president of the bank, and that he then instructed the cashier that said account was one "where we are to credit search fees, bonuses and so forth, and any bad paper the bank may have, will be charged off against this account." It was likewise stated by the defendant that "it was customary among banks to have such an account." For the first two years of the defendant's presidency of the bank he received no salary, and he acted for it as an attorney in relation to various loans which the bank made, and in other legal matters. In 1907 he was awarded a salary of $2,000. The people traced the deposits to the credit of this "President-Special" account by showing that at the beginning there was paid into it various sums of money which belonged to the bank and which arose out of profits on the sale of securities and likewise of some real estate. At the end of June, 1906, the entire balance on deposit to the credit of this "President-Special" account was transferred by the direction of the defendant to "the profit and loss account" of the bank itself.

From time to time other deposits were made thereafter to the credit of this "Special Account," and at the end of May, 1907, the then balance to the credit of this account was likewise transferred to "the profit and loss account" of the bank by the direction of the defendant. The prosecution gave proof as to all items which were deposited to the credit of this account beginning June, 1907, and continuing up to the date of the alleged larceny. These items were eight in number, and aggregated the sum of $4,641.25. In September, 1907, by direction of the defendant, the sum of $2,000 was transferred out of this account to the credit of the bank itself, and was used to pay a dividend to stockholders of the bank. It should be noted that, of the items credited to this particular account, many arose from checks made by outside parties to the order of the Home Bank itself, for example: That of June 12, 1907, for $400; June 13th, $50; July 15th, $1,000. And all of these specific items were credited to this account by the direction of the defendant himself. An item of $1,200 of June 21, 1907, arose from the retention by the bank itself, from a loan to one Brievogel, of the sum of $12,000, a check was made to her for $10,-800, the loan was entered on the books as of $12,000, and the difference, i. e., $1,200, was credited to the "President-Special" account, as aforesaid. The aggregate of the items of credit which I have just cited is

the sum of $2,650. Against these items must be borne in mind the amount of $2,000, which was transferred from the account in question and used by the bank to pay a dividend. Making this allowance, however, there was a balance to the credit of the account in question of $650, arising from the specific items above recited, but other and additional items of credit were proved by the prosecution which went to make up the amount of the balance of $2,500 on October 23, 1907, which was withdrawn on that day by the defendant under the circumstances above outlined.

It seems to us that the proofs of the prosecution on this question made out a case which required a submission to the jury as a question of fact whether the moneys comprising the balance of this account were actually the moneys of the Home Bank at the time the defendant withdrew them for his own private purpose. He did not take the stand himself. Of course, he was not obliged to; but the result was that the jury was left, for the determination of this question of fact, practically to the proofs offered by the prosecution. We are not surprised that they found against the defendant on this question, in view of the state of the record. Nor do we think that the jury were obliged to have a reasonable doubt on this question of fact, based upon the evidence in the case. Therefore we are not disposed to interfere with the judgment upon the questions of fact found by the jury. The jury was instructed by the court that it should not find the defendant guilty of larceny, if the proofs showed that the withdrawal of said moneys and their appropriation to his own use was made by him under an honest belief that he had a right to do so, even though such claim of right was untenable.

The only evidence in the case as to what claim of right the defendant may have entertained is confined to certain claims made by him after the Home Bank was in the hands of the Banking Department of the State, and the proof on this point, as given on behalf of the defendant, is to be found in the testimony of Clarke Williams; but that proof so offered by the defense was very damaging to the defendant, for it shows that, at the time he was examined by Mr. Williams, who was then superintendent of the Banking Department, he had then attempted to account for the use of the moneys so withdrawn by him in a manner that was in flat opposition to the uncontradicted proofs offered by the prosecution on this point. He told Mr. Williams that he had used the moneys so withdrawn in various ways to prevent a run on the bank in the panic of October, 1907, while it appears incontrovertible that the moneys so withdrawn were not used for such a purpose, but were applied to his own individual and private purpose, for the acquisition of certain shares of stock in a financial institution in the city of New York. The defense likewise attempted to prove that the directors of the bank had never made any demand upon the defendant for the restoration of the sums so drawn after the withdrawal was discovered, when the bank had been closed by the Banking Department. The purpose of this attempted proof was to show an acquiescence upon the part of the directors of the bank in whatever claim the defendant had

made that the moneys in question were his own property, and not that of the bank.

[2] The defendant complains that his attempt to prove inaction on the part of the board of directors was not permitted by the court. It seems to us that, if the moneys did in fact belong to the Home Bank, a failure on the part of its directors to demand from the defendant their restoration did not affect the question of his guilt in withdrawing them for his own use, and that the ruling of the trial court on this point was proper; but, on the cross-examination of these various directors, it appeared quite plainly that none of them knew of the existence of such an account on the books of the bank until long after the bank was closed and put in liquidation by the Banking Department.

[3] It is argued by the appellant that the manner in which these funds were withdrawn from the "President-Special" account could not constitute, as a matter of law, a larceny on his part, for all that he did was by his check to present a claim against the bank which, through the other officers or employés of the bank, was admitted to be well founded, and that the payment on his check was voluntary by the bank itself, and that therefore the receipt of the moneys under such circumstances by the defendant was not tortious or criminal. This argument does not address itself to our minds with any convincing force.

[4] The claim of the prosecution was that the credits to this "President-Special" account arose from moneys received by the bank, directly or indirectly as "bonuses" on loans which it made, sometimes directly and at other times through the instrumentality of two corporations, the Remsen Mortgage Company and the Clarendon Mortgage Company, of both of which the defendant was an officer. The defendant argues therefore that, as it was unlawful for the bank to receive a "bonus" in violation of the usury law, it could not acquire any property right in moneys which accrued from "bonuses," and that therefore such moneys could not be the subject of a larceny from the bank itself by this defendant. The mere statement of this argument, as it seems to us, answers itself.

In the brief of the appellant there is considerable discussion of certain alleged errors made by the trial court in the admission and exclusion of evidence, and likewise in its charge to the jury. We have considered these points, while we do not discuss them here, and we fail to find prejudicial error in any of them.

The defendant was sentenced to imprisonment for one year in the penitentiary. He was a lawyer, and his conviction of this offense resulted in his disbarment, and an order had been entered by this court to that effect. So this judgment of conviction is far more important than the mere punishment of imprisonment, for it leaves him in middle life deprived of his right to follow the profession which he had practiced for many years. In view of such circumstances, we have scrutinized carefully the record on appeal.

[5] We come now to the consideration of a very important question of statutory law which lies at the root of the trial. The defendant was tried by a jury selected from a panel of special jurors. The order, which directed a trial by a special jury, provided for the drawing of a

panel of 100 jurors on the 18th day of January, 1913, at 10 o'clock a. m., and required that the jurors so drawn should attend at part 5 of the Supreme Court on January 22d. The case came on for trial on January 22d. At the opening of the trial, the defendant presented in writing a challenge to the panel which specified two grounds of challenge, as follows: (a) That the jurors were not drawn in accordance with section 5 of chapter 602 of the Laws of 1901 as amended by section 2, c. 458, of the Laws of 1904, in that the jurors were required to attend the trial within less than five days after the date on which the panel was directed to be drawn; (b) that the panel of jurors was in fact drawn at 9 o'clock a. m., as directed in the order which provided for a panel of special jurors. The record before us does not show that the district attorney either excepted to the sufficiency of the challenge or entered a denial as to the facts set forth therein. It does show that the trial court overruled the challenge and directed the counsel to proceed with the selection of a trial jury. The defendant excepted to this ruling. The matter of challenges to the panel is regulated by sections 361 to 368, inclusive, of the Code of Criminal Procedure. Section 361 defines a challenge to the panel. Section 362 prescribes that such a challenge must be based "only on a material departure, to the prejudice of the defendant, from the forms prescribed by the Code of Civil Procedure and the judiciary law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn." Section 363 requires the challenge to be in writing. Section 364 (which we quote in full) provides as follows:

"If the sufficiency of the facts alleged as a ground of challenge be denied, the adverse party may except to the challenge. The exception need not be in writing, but must be entered upon the minutes of the court; and thereupon the court must proceed to try the sufficiency of the challenge, assuming the facts alleged therein to be true."

Section 365 provides that, if the court deems the challenge sufficient, it may permit the party excepting to withdraw his exception and to deny the facts alleged in the challenge, or that, if the exception be allowed, the court may permit an amendment of the challenge. Section 366 provides that:

"If the challenge be denied, the denial may, in like manner, be oral, and must be entered upon the minutes of the court; and the court must proceed to try the questions of fact."

The appellant contends that the trial court had no power to try and overrule his challenge to the panel unless the prosecution either excepted to it as insufficient or denied the facts therein recited. As the record stands, there appears to have been no exception as to sufficiency of the challenge, and no denial of its facts as alleged. This situation leaves the facts admitted, and the challenge must be considered by this court in that light. We are not prepared to go to the length of holding that, if a challenge to the panel be insufficient on its face, the failure of the record to show an exception to it as insufficient vitiates necessarily the action of the trial court in overruling it as insufficient. There appears to have been an irregularity in the procedure

adopted on the trial, but one, in our judgment, not important enough to invalidate all the further proceedings of the trial, if in truth the decision of the trial court overruling the challenge as insufficient was right upon the merits of the question of sufficiency.

[6] We will take up for consideration separately the grounds assigned by the challenge to the panel. Chapter 602 of the Laws of 1901 provided for the appointment of a commissioner of jurors in all counties of the state having a population of 1,000,000 or over. The appointment of such commissioner was directed to be made by the Appellate Division of the Supreme Court in the judicial department in which any of said counties was located, and on the commissioner so to be appointed powers and duties were imposed as to the selection of lists of special jurors in civil and criminal cases, the drawing of a special panel whenever such was ordered by the court, and the method of the return of the panel so drawn. When this statute was enacted in 1901, it purported to apply to the counties of New York and Kings. By section 5 thereof, it was provided under what circumstances a trial of a civil action or criminal proceeding before a special jury might be ordered. It was provided further in said section, if a trial before a special jury was ordered, that:

· "The order must specify the time when the drawing of such special jury shall take place and the number of special jurors to be then drawn, the term of the court and the particular day in the term when such special jury must attend."

This section of the act of 1901 was amended by chapter 458 of the Laws of 1904, by adding thereto a clause as follows:

"The day so specified for the attendance of the special jury must, except in the case of an order for additional special jurors drawn under section seven of this act, ·be at least five days in addition to any Sunday, holiday or half holiday, after the day specified for the drawing of the special jury."

This amendatory act of 1904 is entitled "An act to amend chapter six hundred and two of the laws of nineteen hundred and one," etc. If at the time of this amendment the act of 1901 still applied to Kings county, the panel of special jurors in the case at bar was not made up in conformity with law, for, even not excluding a Sunday and a Saturday half holiday which intervened, the special jurors were required to attend in less than five days "after the day specified for the drawing of the special jury." It is contended, however, by the respondents that the amendatory statute of 1904 had no application to Kings county, inasmuch as the act of 1901, which was thereby amended, did not then apply to Kings county.

A brief survey of the statutes relating to this question will be helpful to a determination of this question. By chapter 378 of the Laws of 1896, provision was made for the appointment of a special jury commissioner in all the counties of the state having a population of° 500,000 or more, and for the preparation of lists of special jurors in criminal cases. That act provided for the appointment of the special jury commissioner by the Appellate Division of the Supreme Court in the respective judicial departments in which the affected counties were located. Kings county was among those so affected. That act

contained a number of detailed provisions as to the manner of making up the lists of special jurors and likewise as to the manner of drawing a panel from the names of special jurors so selected. By chapter 601 of the Laws of 1901, the act of 1896 was repealed expressly on the 27th day of April, 1901. On the same day was enacted chapter 602, above referred to, which was entitled "An act to provide for the appointment of a commissioner of jurors and to provide for a special jury in civil and criminal actions in each county of the state having a population of one million or more, according to the last preceding federal census." Thus the act purported to relate to the counties of New York and Kings. Section 1 of this act directed the Appellate Division of the Supreme Court, in the department in which each of the respective counties was situated, to appoint a commissioner of jurors within 20 days after the act took effect, and provided for the administration of the office of the commissioner of jurors so to be appointed. The remainder of the act, from sections 2 to 9, inclusive, conferred certain powers and imposed certain duties in relation to special juries upon the commissioner of jurors appointed under section 1 of said act. So far as this act applied to the appointment of a commissioner of jurors in Kings county by the Appellate Division of the Supreme Court in the Second Department, it was declared unconstitutional. Matter of Brenner, 67 App. Div. 375, 73 N. Y. Supp. 689; Id., 170 N. Y. 185, 63 N. E. 133. The decision of the Court of Appeals was handed down March 14, 1902.

On April 27th of that year, chapter 564 of the Laws of 1902 was enacted and took effect immediately. It was entitled, "An act in relation to jurors, and to the appointment and duties of a commissioner of jurors in the county of Kings." This act provided for the appointment of a commissioner of jurors in Kings county by the county judges and the surrogate of said county, and provided for the organization and administration of the office of said commissioner. The remainder of this act, from section 7 to section 15 thereof, inclusive, was practically in ipsissimis verbis, the same as sections 2 to 9, inclusive, of the act of 1901. By section 16 of the act of 1902 it was provided that "all special or general laws inconsistent with the provisions of this act are hereby repealed."

The appellant contends that the various provisions of the act of 1901, not inconsistent with the act of 1902, were not repealed, but continued in full force as affecting Kings county. This is a question of legislative intent purely. In the first place, however, it becomes necessary to inquire if any provision of the act of 1901 ever became operative as to Kings county. All the provisions of that act as to the powers and duties of a commissioner of jurors related to a commissioner of jurors to be appointed in accordance with its directions. These powers and duties were not prescribed generally for a commissioner of jurors, but solely for the commissioner contemplated by this act itself, and none other. It would follow that, if the provision for the appointment of such commissioner never went into legal effect in Kings county, then the other provisions as to the powers and duties of such commissioner likewise did not go into legal effect. The result of the

holding that the provision of said act of 1901 as to the appointment of the commissioner was unconstitutional as to Kings county was necessarily that no part of the act ever became operative as to Kings county. Therefore the Legislature, in enacting the statute of 1902 in relation to Kings county, did not simply re-enact and continue as to Kings county certain provisions of a prior general statute relating to Kings county, but, on the contrary, it put the whole subject-matter, so far as it related to Kings county, on a distinctly independent and exclusive statutory basis. Therefore the act of 1904, amending expressly the act of 1901, in no way amended the act of 1902, as neither an express repeal of the act of 1901 would have carried with it an implied repeal of the act of 1902, for each act was separate and distinct legislation. The mere fact that certain of the provisions of the act of 1901 were incorporated in the act of 1902, and without any express reference to the former act, did not so operate to continue these provisions, if ever applicable to Kings county, to such an extent that an amendment of the statute in which they had their origin, by itself and without legislative declaration to that effect, resulted in an amendment of the similar provisions of the later statute in which they had been incorporated. Knapp v. City of Brooklyn, 97 N. Y. 520. While the re-enactment of prior statutory provisions is not to be deemed a new enactment but simply a continuance of such provisions to the extent of the re-enactment, as to rights accrued or duties imposed, yet after the re-enactment the later statute is to be deemed the basis or the authority for the provisions so re-enacted, as to their future application, and they rest upon such basis and authority independently of the statute of their origin. Matter of Prime, 136 N. Y. 347, 32 N. E. 1091, 18 L. R. A. 713, and cases cited.

This leads to the conclusion that this point is covered by section 11 of the act of 1902, which is in words the very same as section 5 of the act of 1901 as enacted originally. Therefore the first ground of the challenge to the panel was without legal merit and insufficient on its face.

[7] As to the second ground, section 12 of the act of 1902 provides in part as follows:

"At the time specified in the order the special jury shall be drawn at the office of the commissioner of jurors, by the commissioner of jurors, or his deputy, and a judge or justice of a court of record residing in the department in which such special jury is to be drawn."

The time specified in the order in this case was January 18, 1913, at 10 o'clock a. m. The special jury was drawn at 9 o'clock a. m. on January 18th. Hence there was a disregard of the provision of the order and of the statute as to the time of the drawing. The respondents contend that this disobedience of the order and of the statute constituted at most but a mere irregularity which was not important enough to affect the subsequent proceedings, and they cite in support of their contention numerous authorities in which mere irregularities, not prejudicial to a substantial right, were disregarded in order to uphold a judgment. One of the obvious purposes of requiring the time of drawing special jurors to be fixed in advance, and that the draw-

ing should take place at the time so fixed, was to give the parties affected an opportunity to be present at the drawing and to see for themselves that the drawing took place in conformity with law, and, if any illegalities occurred, to secure their correction by appropriate methods. This was a substantial right intended for the benefit of the parties, and its denial was presumptively prejudicial. People v. McQuade, 110 N. Y. 284, 18 N. E. 156, 1 L. R. A. 273. As the selection of a panel of special jurors was a departure from the ordinary methods of criminal procedure, strict compliance with the statute is necessary. Industrial & General Trust, Ltd., v. Tod, 104 App. Div. 518, 93 N. Y. Supp. 725.

There are many cases in which irregularities in the method of obtaining a panel of ordinary trial jurors in the trial of criminal cases have been considered by the courts, and were held not to invalidate the judgment. Friery v. People, *41 N. Y. 424–448; Ferris v. People, 35 N. Y. 125–129; People v. Schmidt, 168 N. Y. 568, 577, 61 N. E. 907. These cases, however, did not involve a consideration of a panel of special jurors. It was said, however, in the opinion in the Friery Case, ut supra, that, if the panel of jurors was to be specially selected, the forms and regulations prescribed by the statute became imperative upon those charged with the duty of selection, and that "in such case it would be the right of a litigant to have the statute relations and forms strictly complied with, independent of any suggestion of fraud or misconduct."

We have reached the conclusion that the second ground of the challenge should have been sustained, unless it be that no challenge lies to a panel of special jurors. Such is not claimed in the respondents' brief, and in People v. Hall, 169 N. Y. 184, 62 N. E. 170, and People v. Ebelt, 180 N. Y. 470, 73 N. E. 235, we have authorities where challenges to panels of special jurors were passed upon by the courts and disposed of upon the merits of the challenge.

We think the judgment of conviction should be reversed, and a new trial granted, on the sole ground of error in overruling the second ground of the challenge to the panel. Settle order before the Presiding Justice.

JENKS, P. J., and RICH, J., concur. BURR, J., reads for affirmance, with whom THOMAS, J., concurs.

BURR, J. (dissenting). I agree with Mr. Justice CARR that the evidence in this case establishes defendant's guilt beyond a reasonable doubt.

I also agree that the laws of 1904 (chapter 458) amending Laws of 1901 (chapter 602), which amendatory act provides that the drawing of a special or struck jury must be had at least five days before the date fixed for the attendance of the said jury, has no application to Kings county.

In the Brenner Case, referred to in his opinion, the Court of Appeals held that, applying the act of 1901, which though general in form in fact only affected New York county and Kings county, to the latter county, would be in violation of the constitutional provision as to

the method of appointment of county officers. The Court of Appeals. also decided, six months later (Matter of Allison v. Welde, 172 N. Y. 421, 65 N. E. 263), that the act of 1901 was applicable to New York county and a valid legislative expression so far as that county was concerned. We have, then, a valid general act passed in 1901, and a special act applicable to Kings county passed in 1902, whose constitutionality up to this time has not been assailed. It would be carrying "legislative intent" altogether too far to suppose that the provisions. of the general act of 1901 which are not inconsistent with the act of 1902 still apply to Kings county. But if that might be urged as to the original act, how could it be so held with regard to the amendatory act of 1904, which does contain such provisions, and which contains no repealing clause?

I also agree with Mr. Justice CARR that the challenge to the array must be treated as if it had been excepted to and the challenge declared insufficient. In this connection it may not be amiss to notice that, according to the clerk's minutes, the challenge to the array was. not made until after the jury had been impaneled and sworn. If such was the case, it was too late. Code of Criminal Procedure, § 363. The case on appeal, however, might indicate that this challenge was filed before the jury were sworn. For the purposes of discussion, I shall assume that it was so taken, and that the question is whether, assuming everything stated in the challenge to be true, the challenge was sufficient in form. If not, it was properly disallowed. I assume therefore that, although the order directed the drawing of the special jury to commence at 10 o'clock in the forenoon of January 18, 1913, as. matter of fact such drawing did commence at 9 o'clock of the same day. I cannot agree that from this fact alone capital error is shown. At common law the only ground of challenge to the array was founded "upon the partiality or default of the sheriff, coroner, or other officer making the return." Thompson & Merriam on Juries, § 126; Coke on Littleton, 156b, 3 Thomas Ed., 472. The grounds of such challenge, upon a criminal trial, are now regulated by statute. Code of Criminal Procedure, §§ 361–368.

"A challenge to the panel can be founded only on a material departure, to the prejudice of the defendant, from the forms prescribed by the Code of Civil Procedure and the judiciary law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn." Code of Criminal Procedure, § 362.

Strictly construed, the departure asserted, to wit, a variance between the hour named in the order and the hour when the drawing actually commenced, is not based upon anything contained either in the Code of Civil Procedure, §§ 1063–1071, or in the Judiciary Law (Consol. Laws 1909, c. 30) §§ 680–736. It is perfectly clear that this special jury was not drawn in accordance with the provisions of either statute, but under those of the special act relating to Kings county. Laws of 1902, supra, §§ 11 and 13. It may be, therefore, that there is no statutory ground for challenge to the array of a special jury drawn under the act of 1902.

"It seems to have been a matter of some doubt, according to the early cases, whether a panel of special jurors was for any cause subject to a challenge to the array." Thompson & Merriam on Juries, § 144, subd. 2.

Such challenges have been received, however, and acted upon within this state. People v. Tweed, 50 How. Prac. 262–290; People v. Hall, 169 N. Y. 184, 62 N. E. 170; People v. Ebelt, 180 N. Y. 470, 73 N. E. 235.

If we consider all of the statutory provisions contained either in the Code of Civil Procedure or the special law above referred to applicable to Kings county (I make no reference to the Judiciary Law, for it contains no provisions relating to the selection of a special or struck jury), at least two facts must be shown by the challenge itself: First, a material departure from statutory requirements; and, second, prejudice resulting therefrom to the defendant. The general rule in regard to statutory provisions respecting the drawing of a jury panel is that they are to be considered directory merely, and all irregularities therein, unless plainly shown to have operated to the prejudice of the challenging party, form no ground for challenging an array. Thompson & Merriam on Juries, § 143. Was this variation material? The Code of Civil Procedure provides that:

"Unless the order specifies, or directs the officer, who is to strike the jury, to fix a time for the parties to attend, the party obtaining it must give at least eight days' notice of the time when he will attend, * * * in the * * * county of Kings, before the commissioner of jurors, for the purpose of having the jury struck." Code of Civil Procedure, § 1064.

The special act of 1902 contains a provision that:

"The order must specify the time when the drawing of such special jury shall take place and the number of special jurors to be then drawn, the term of the court and the particular day in the term when such special jury must attend." Laws of 1902, c. 564, § 11.

And, again:

"At the time specified in the order the special jury shall be drawn at the office of the commissioner of jurors." Id., § 12.

The order did specify the time. It named not only the day, but the hour of the day when the drawing was to commence. If, then, it was irregular to commence the drawing of the jury before 10 o'clock on the morning of January 18th, and the challenge be deemed to point out a material variation from the statutory requirements, still is it sufficient? Not if it fails to show that anything occurred "to the prejudice of the defendant." Code of Criminal Procedure, § 362. The statute requires that this should be as clearly shown as that the variation was material. And it was clearly the duty of the challenging party, under the language of this statute, to state facts showing such prejudice: First, because there is no presumption of injury resulting from the irregularity; and, second, because the statute in express words requires him so to do.

"The statutory provisions regulating the drawing of jurors * * * have not in view the benefit of litigant parties. * * * Mere irregularities in the drawing of jurors, unless it appears that they operated to the injury of the complaining party, will not afford a valid objection to the panel as drawn." Thompson & Merriam on Juries, § 63.

Suppose that at 9 o'clock in the forenoon defendant and his counsel were present, as probably they had a right to be if they so desired, and that every other person required by statute to participate in the drawing was also present, and without objection the drawing was begun at that hour, and from that moment until its completion every statutory requirement was strictly observed; could it be said that the defendant was prejudiced by the hour of the commencement of the drawing? If so, then it must be equally true if the drawing had begun at 5 minutes before 10, or 2 minutes, or even 1 minute before that hour. Or, again, suppose that at no time during the day, either at 9 o'clock or 10 o'clock or at any other hour, the defendant and his counsel, or either of them, attended at the place where the jury was to be drawn, and the drawing of the jury began at 9 o'clock instead of at 10 and continued until completion, and every statutory requirement was strictly followed except as to the hour when the drawing began; could it be said by this anticipation of the time named in the order that the defendant was prejudiced?

There is no suggestion in the challenge as to the fact upon either hypothesis. If defendant was there and participated in the commencement of the drawing at 9 o'clock instead of at 10, from that variance alone he could not have been prejudiced. If he was not there at all during the day, did not intend to be present when the jury was drawn, and made no effort to be present, again he is not prejudiced. The only possible ground upon which we could concede that he might have been prejudiced was that he did intend to be present at the drawing of the jury, that he attended at the place named for that purpose at 10 o'clock, and that at that hour the drawing had been completed. It is possible that under such circumstances, if such facts had been alleged, it would have been incumbent upon the people to show the strictest compliance with the statutory requirements. It is not necessary for us to decide whether, in such case, the variance would be material and prejudicial. I think it is enough to say that, in the absence of some fact alleged in the challenge showing prejudice, none can be presumed. Such construction is not only in accord with the express language of section 362 of the Code of Criminal Procedure, but is also in accordance with the general rule that:

"After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." Code of Criminal Procedure, § 542.

Far more serious irregularities have been declared in decided cases to be insufficient to reverse a judgment of conviction. People v. Hall, 169 N. Y. 184, 62 N. E. 170; Friery v. People, *41 N. Y. 424; Ferris v. People, 35 N. Y. 125, on page 129; People v. Petrea, 92 N. Y. 128; People v. Burgess, 153 N. Y. 561, 47 N. E. 889; People v. Schmidt, 168 N. Y. 568, on page 577, 61 N. E. 907; People v. Ebelt, 180 N. Y. 470, 73 N. E. 235.

In People v. Hall, supra, which was a homicide case, where defendant was convicted of the crime of murder in the first degree, the specifications in the challenge to the array of a special jury contained, among other things, a statement "that the person making the affidavit

to procure the order for a special jury described himself therein as 'deputy assistant district attorney,' when there is no such office," and that "no notice of the application for said order was ever personally served upon the defendant." The court held each of these specifications insufficient, and then said:

"We have examined the other specifications, which are not meritorious, but purely technical and such as may well be disregarded because they do not affect the substantial rights of the defendant. Code Cr. Pro. § 542. The section cited is a statute of jeofailes, applied to criminal practice, and its command, that 'the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties,' is designed to secure promptness in the administration of justice by preventing new trials, except when substantial justice requires it. The complement of the statute is found in section 527, which authorizes a new trial if the court is satisfied that justice requires one, 'whether any exception shall have been taken or not.' Thus, the theory upon which the Legislature commands appellate courts to administer the criminal law is, on the one hand, to disregard technical errors not affecting substantial rights, and, on the other, to do justice regardless of exceptions. The rule now governing appeals in criminal actions is that they must be considered and decided upon the merits, so that delays may be avoided and justice may be done. We find no reversible error in the decision of the trial court overruling the challenge to the panel."

In the Friery Case, supra, the challenge was that the clerk drew the jury without the officers named in the statute being actually present at the drawing; that no minute of the drawing, upon its completion, was signed and certified by the proper officers and filed with the clerk, nor any copy of such minute delivered to the summoning officer; but that the ballots drawn from the jury box were delivered to him by the clerk, from which he summoned the jurors; and that, after summoning, the ballots were returned by the sheriff to the clerk, and the names then entered by the latter in a book in his office as the minute of the drawing. The challenge in that case was overruled, and the court said:

"The challenge in this case merely alleges a defective working of the drawing machinery, without its terms imputing a perversion thereof to the injury of the accused. * * * The acts and omissions complained of, the mere defective working of the statute machinery by the drawing and summoning officers, in the absence of any suggestion of fraud or misconduct * * * save a neglect or omission to strictly observe the prescribed regulations, is not ground of challenge to the array."

In the Ferris Case, supra, it appeared that some of the officers whose presence was required at the drawing omitted to attend. The court, sustaining an overruling of the challenge, said:

"The officers whose duty it was to attend such drawing were clearly guilty of a gross neglect of their duty, and doubtless are liable to punishment therefor. The question still arises whether any injury has resulted to the prisoner, or he has been prejudiced thereby."

In People v. Petrea, supra, the defendant was indicted by a grand jury drawn under the provisions of a statute which was clearly unconstitutional and held so to be, and the panel was drawn from the petit jury list instead of from a separate list of grand jurors. It was held that neither fact showed prejudice to the defendant; that he was indicted by a grand jury competent to act and assembled under color of law.

In the Burgess Case, supra, the sheriff did not, as required by the statute, serve notice on the jury personally, but sent them the notice to attend by mail. It did affirmatively appear that all of the jurors attended who had been summoned except five, and of these one was dead, two were ill, one was deaf, and one a resident of another county. The court, sustaining a ruling of the trial court in overruling the challenge to array, said:

"It is thus evident that no right of the defendant was invaded."

In the Schmidt Case, supra, certain jurors were excused from the panel on unsworn statements as to their excuses. It was conceded that this was irregular, but the court held that it was an irregularity of which defendant could not complain. The court said:

"It was not shown that the action of the court in any manner operated to the prejudice of the defendant, and it is difficult to imagine how it could have had that effect. * * * The suggestion that had these jurors been sworn they might not have been excused, but have been drawn on the jury and possibly a different verdict rendered, is pure speculation without any foundation of fact."

In the Ebelt Case, supra, a similar question was raised as to the constitutionality of an act providing for a commissioner of jurors in Westchester county, in accordance with which the jury was summoned. The court, sustaining a ruling overruling the challenge, said the grounds of such challenge "must be founded on a material departure to the prejudice of the defendant from the forms prescribed by the Code of Civil Procedure in respect to the drawing and return of the jury." It appears that the jury in this case was drawn and summoned under an act which was probably unconstitutional, although there was a deficiency in the statement of the facts in the challenge respecting the same. The court continued:

"While we might properly rest our decision on the question considered with reference to the sufficiency of the facts alleged in the challenge, we have concluded, in view of the great public importance of the questions arising with reference to the validity of juries impaneled for the purpose of trying questions of fact in both civil and criminal cases involving the lives, liberties, and properties of our people, to determine the question of the validity of the trial, upon the assumption that the act in question was violative of the provisions of the Constitution to which we have referred."

The court, then considering the facts, said:

"It is therefore not apparent how the defendant was prejudiced in respect to the drawing and return of the jurors. He got good, qualified men, selected from the qualified citizens of the entire county and persons with whom he was entirely satisfied after submitting each juror to a personal examination. The jury was drawn and summoned in accordance with the provisions of a statute. Presumably there was no other jury list in existence in this county from which jurors could be drawn."

I think these cases are authority for the proposition that the burden rests upon the challenging party to show not only a material variation, but facts from which it may be seen that there was prejudice resulting to him therefrom. This, I think, does not appear. As it seems to me, the practical result which would follow the prevailing opinion must be this. Under the Code of Criminal Procedure, when this

challenge to the array was interposed the only power given to the district attorney was to "except" to it, if insufficient (section 364), which is equivalent to a demurrer upon the same ground; or to "deny the facts alleged in the challenge" (section 368). The only fact alleged in the challenge was that the drawing commenced at 9 o'clock instead of at 10. If that was so, the district attorney could not deny it, and yet, if the defendant was present during the time of the drawing and every right of his was sedulously guarded, the district attorney could not show this, for the statute does not permit him to show anything by way of affirmative defense. It seems clear to me, therefore, that the burden of showing prejudice rests upon the challenging party, and that he must show this by facts stated in the challenge. I am not prepared to say that there can be no case where the variance is so material that from that fact alone prejudice might not be presumed. If an officer upon whom devolved the drawing of jurors were instructed to draw a jury from residents of Kings county, and drew from a jury list of residents of another and distant county, perhaps in such case prejudice might be presumed from that fact alone. But this is not such a case, and, in addition to the "departure," facts showing prejudice should have been shown. Otherwise the form of the challenge was insufficient.

There is just one further suggestion in connection with the practice pursued in overruling the challenge. Defendant contends that if the challenge had been in express terms overruled as insufficient, after exception by the district attorney, he would have been entitled to an amendment of the challenge. This is not the law. "If the exception be allowed, the court may, in like manner" (that is, if justice require it) "permit an amendment of the challenge." Code of Criminal Procedure, § 365. There is nothing to suggest that any fact could have been added to the challenge, or that there was any obligation upon the trial court to allow an amendment thereof. It was discretionary with him, provided justice required it. There is no suggestion that it did. I think therefore that this judgment should be affirmed.

THOMAS, J., concurs.

(160 App. Div. 80)
### In re GRAND BOULEVARD IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

EMINENT DOMAIN (§ 149*)—COMPENSATION—FEE SUBJECT TO EASEMENT.

    The conveyance of lots according to a filed private map, showing a street thereon, creates private easements of light, air, and access over the land shown as a street, which are not extinguished by the discontinuance of the street after its subsequent establishment; so that the owner of the fee of the street, on it being later condemned for a street, is entitled to only nominal damages.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*]

Appeal from Special Term, New York County.
In the matter of the application of the City of New York to ac-